**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DEANNA MINYARD, | ) | |
| | ) | CASE NO. 5:14-cv-02128 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE GREG WHITE |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security | ) | **MEMORANDUM OPINION & ORDER** |
| | ) | |
| Defendant. | ) | |

Plaintiff Deanna Minyard ("Minyard") challenges the final decision of the Acting Commissioner of Social Security, Carolyn W. Colvin ("Commissioner"), denying Minyard's claim for a Period of Disability ("POD") and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423 *et seq.* This matter is before the Court pursuant to 42 U.S.C. § 405(g) and the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, the final decision of the Commissioner is VACATED and the case is REMANDED for further proceedings consistent with this opinion.

## I.  Procedural History

On August 8, 2011, Minyard filed an application for POD and DIB alleging a disability onset date of January 4, 2010.  (Tr. 19.)  Her application was denied both initially and upon reconsideration.  Minyard timely requested an administrative hearing.

On June 4, 2013, an Administrative Law Judge ("ALJ") held a hearing during which Minyard, represented by counsel, and an impartial vocational expert ("VE") testified.  (Tr. 19.)  On June 12, 2013, the ALJ found Minyard was able to perform a significant number of jobs in the national economy and, therefore, was not disabled.  (Tr. 30-31.)  The ALJ's decision became final when the Appeals Council denied further review.

## II.  Evidence

### *Personal and Vocational Evidence*

Age forty-eight (48) at the time of her administrative hearing, Minyard is a "younger" person under social security regulations.  *See* 20 C.F.R. § 404.1563(c).  Minyard has a limited education and past relevant work as a laborer, sanitation specialist, and industrial cleaner.  (Tr. 29.)

### *Relevant Medical Evidence*[1]

Several years prior to her alleged onset date of January 4, 2010, Minyard twisted her left ankle at work in June of 2007.  (Tr. 263.)  She heard a crack and fell.  *Id*.  Since that incident, she experienced severe pain in her left ankle and some swelling. *Id*.  X-rays of her left ankle revealed a comminuted distal tibia and fibular fracture.  (Tr. 264.)  On June 23, 2007, orthopedic

---

[1]  The Court's recitation of the medical evidence is not intended to be exhaustive and focuses solely on Minyard's physical impairments, especially those that relate to sitting, standing, and walking.

2

surgeon Steven Coss, M.D., performed an operation consisting of open reduction and internal fixation of the left distal tibia and fibula.  (Tr. 283.)  She was provided with crutches.  (Tr. 300.)

Minyard experienced a nonunion requiring surgery.  (Tr. 333, 515.)  An open takedown of the nonunion site with bone grafting was performed on February 11, 2008.  *Id.*

On March 23, 2008, Minyard presented with headache and ocular nerve palsy.  (Tr. 340.)  A CAT scan performed two days later revealed elongated distal right internal carotid artery aneurysm at approximately the level of the posterior communicating artery, complex appearing multi-lobulated left vertebral artery aneurysm, and an infundibular shaped structure thought to represent a small aneurysm.  (Tr. 340, 347.)  Minyard underwent a craniotomy for clipping of a pecom aneurysm.  (Tr. 343-44.)

Relating to the ankle, on June 24, 2008, a CT scan revealed "persistent areas of cortical nonunion," but "no malalignment of the fracture fragments."  (Tr. 338-39.)  An additional CT scan performed on November 17, 2008 revealed similar results.  (Tr. 595.)

On December 17, 2008, Minyard presented to the ER with a headache and stated she suffered headaches twice a week since July.  (Tr. 336-37.)  She was prescribed Vicodin.  (Tr. 337.)

On June 11, 2009, Dr. Coss noted that bone grafting had been performed 8 to 10 months ago and there was evidence of "bridging callus" and "symptoms over the hardware."  (Tr. 333.)  Dr. Coss performed surgery the same date to remove the hardware.  (Tr. 333-34.)  Minyard tolerated the procedure well.  *Id.*  The post-operative plan included application of a posterior splint and only partial weight-bearing for 2 to 3 weeks.  (Tr. 334.)

On July 15, 2009, Minyard was wearing a walking boot and complained of some pain

3

around the ankle for which she takes Percocet.  (Tr. 384.)  She was still off work at the time, but thought she could return to light, office work.  *Id*.  On objective examination, Dr. Coss noted "mild-moderate" limp, tenderness, and swelling.  *Id*.  Dr. Coss noted that Minyard will need to continue using the walking boot for three to four more weeks and then be weaned onto a brace.  (Tr. 385.)  He stated Minyard was able to return to work but with restrictions to sedentary levels.  *Id*.

On October 9, 2009, Minyard was again seen by Dr. Coss and she complained of constant pain in her left ankle that she rated between a 6 and 7 on a scale of 1 to 10.  (Tr. 380.)  X-rays of her left ankle confirmed evidence of bony union after hardware removal surgery.  (Tr. 381.)

On December 15, 2009, Minyard reported constant pain in the left ankle that radiated to the left knee.  (Tr. 378.)  It was noted Minyard was "working light duty."  *Id*.  Dr. Coss provided Minyard a one-year handicap placard and she was to continue using her ankle brace.  (Tr. 379.)

On March 8, 2010, Minyard was seen by Dr. Coss' physician assistant, Clifford Merz, P.A.C.  (Tr. 376-77.)  Mr. Merz noted swelling and mild crepitation with range of motion in the tibiotalar joint.  *Id*.

On June 8, 2010, Minyard was seen by Dr. Coss and stated that her ankle was "sore" all the time.  (Tr. 374.)  Dr. Coss noted that he had placed Minyard on permanent restrictions which her job could not accommodate and that she was not working at that time.  *Id*.

On September 8, 2010, Minyard reported that her ankle pain was 6 out of 10, with occasional shooting pain up her shin and some numbness in her toes.  (Tr. 371.)  Minyard stated that she wore her brace all the time, which helps her walk, but did not use a cane.  *Id*.  She stated that on bad days her pain was 8 of 10, and 5 of 10 on good days.  *Id*.  Occasionally, she has pain-

free days.  *Id*.  She even experiences pain when at rest.  *Id*.  Examination revealed a mildly

antalgic gait with mild limp, mild-moderate tenderness and swelling, and a mildly reduced range

of motion.  (Tr. 372.)  Dr. Coss concluded Minyard's six different surgical incisions were well

healed, but she continued to suffer from deep perineal nerve pain and left ankle tendinitis.  *Id*.

He opined that "[a]t this point it is unlikely that she will get better, she does have permanent

partial disability with the left ankle.  A disability writing is needed for this."  *Id*.

On March 8, 2011, Minyard was seen by Dr. Coss for constant soreness in her left ankle.

(Tr. 369.)  Examination revealed mild sensitivity and mildly reduced range of motion.  (Tr. 370.)

Minyard was advised to "[c]ontinue assistive devices, ankle brace."  *Id*.  She was prescribed

Lyrica for nerve pain.  *Id*.

On June 8, 2011, Minyard was seen by James R. Bavis, Jr., M.D.  (Tr. 434-35.)  He found

that Minyard's history is "most consistent with cervical spinal degenerative joint disease

with occipital neuralgia inducing migraine headaches."  (Tr. 435.)  Minyard was referred for

physical therapy and for occipital nerve blocks.  *Id*.  He also prescribed medications for her

migraines.  *Id*.

On June 16, 2011, Minyard presented to Dr. Coss with continued complaints of left ankle

pain.  (Tr. 538.)  He noted she ambulated with a mild limp, and used an ankle brace.  *Id*.

Minyard had mild to moderate swelling of the left ankle and joint pain with range of motion.  *Id*.

Dr. Coss commented that Minyard had been compliant with therapy and using her brace, yet she

continued to experience considerable pain in her left ankle.  (Tr. 539.)  He opined that she may

be a candidate for pain management.  *Id*.

On July 11, 2011, Minyard was seen by Michael Rivera-Weiss, M.D., upon referral from

Dr. Coss. (Tr. 515-17.) Sitting and simply standing and walking were reported as aggravating factors, as well as 30-39 pounds of weight gain in the past year. (Tr. 515.) Dr. Rivera-Weiss prescribed Vicodin for pain. (Tr. 517.)

On July 21, 2011, Minyard reported to Dr. Bavis that she suffers from two to three migraines per week (Tr. 432.) Cervical x-rays revealed arthritic changes from C3-4 down to C6-7, including bone spurs and neuroforaminal narrowing at multiple levels. *Id*. Dr. Bavis diagnosed occipital neuralgia, migraines, and cervical spinal degenerative joint disease and arthritic changes. *Id*.

On August 22, 2011, Minyard reported medication had significantly reduced her pain level without side effects. (Tr. 519.)

On September 14, 2011, Minyard reported to Dr. Coss that her pain was a little better since she was prescribed Lyrica and Nucynta. (Tr. 535.) Dr. Coss recommended that she continue to ice her ankle and, with respect to full weight bearing, she was advised to keep her current permanent restrictions. (Tr. 536.)

On September 30, 2011, Minyard received an occipital nerve block for pain. (Tr. 850.)

On October 3, 2011, Elizabeth Das, M.D., reviewed Ms. Minyard's medical records and opined that she could lift 20 pounds occasionally, 10 pounds frequently, stand/walk for 6 hours, and sit for 6 hours in an 8-hour workday. (Tr. 80.)

In a letter dated October 20, 2011, Dr. Bavis reported that Minyard suffered from occipital neuralgia, migraines, and numbness and tingling in the arms bilaterally. (Tr. 762.) It was noted that an EMG/nerve-conduction study performed earlier in the month was negative. (Tr. 762, 779.)

6

On November 9, 2011, Minyard began physical therapy and had completed twelve sessions by January 5, 2012.  (Tr. 632, 635.)  Minyard stated that she was still experiencing neck/arm pain and intermittent headaches.  (Tr. 632.)

On November 10, 2011, Minyard told Dr. Rivera-Weiss that her left ankle pain with medication was a 2 out of 10 and a 7 without it.  (Tr. 615.)  She complained her medication was causing her to be depressed and irritable with decreased hearing.  *Id*.  Examination revealed tenderness of the left leg, ankle and foot with moderate swelling of the left ankle, and mild-moderate antalgic gait.  (Tr. 616.)  Minyard's pain medications were changed.  (Tr. 617.)

On December 5, 2011, Minyard reported the same level of pain with the side effect of drowsiness from her medications.  (Tr. 618.)  She also reported occasional numbness in her left foot.  *Id*.  Examination revealed mild-moderate tenderness of the left leg, ankle and foot with mild swelling of the left ankle, and mildly antalgic gait.  (Tr. 619.)  Minyard's pain medications were changed.  (Tr. 620.)

On January 3, 2012, Minyard again reported the same level of pain with no side effects. (Tr. 621.)  Examination revealed mild-moderate to moderate tenderness of the left leg, ankle and foot with mild swelling of the left ankle, and mildly antalgic gait.  (Tr. 622.)  Minyard's pain medications were changed.  (Tr. 623.)

On February 13, 2012, an x-ray of Minyard's right shoulder x-ray revealed degenerative osteoarthritis and chronic changes.  (Tr. 741.)  A cervical CT scan the following day showed degenerative disc and joint disease at multiple levels, no disc protrusion of central canal stenosis, and foraminal stenosis on the right at C3-4.  (Tr. 737.)

On February 17, 2012, Daniel Lynch, M.D., saw Minyard for a pain management

consultation and treatment plan.  (Tr. 730-32.)  Dr. Lynch doubted Minyard's pain would be

completely eliminated by any single medication and/or injection, but was confident a multi-

disciplinary approach would greatly attenuate her pain.  (Tr. 731.)

On February 23, 2012, a cervical x-ray revealed degenerative disc and joint disease.  (Tr.

734.)

On March 22, 2012, Minyard reported to Dr. Davis that she was experiencing a lot of

neck pain and pain in the back of her head, but that her use of a TENS unit and medication was

helping.  (Tr. 756.)

On April 3, 2012 and April 24, 2012, Minyard received cervical epidural steroid

injections.  (Tr. 843, 856.)

Between February 17, 2012 and April 21, 2012, Minyard attended 12 sessions of physical

therapy.  (Tr. 860.)  Her cervical and upper thoracic pain, range of motion and strength improved,

and she rated her pain a 2 on a 10 point scale (8 of 10 when experiencing a migraine).  (Tr. 860.)

On April 25, 2012, Gerald Klyop, M.D., reviewed Minyard's medical records opining

that she was capable of light exertional work with limited reaching bilaterally in all directions.

(Tr. 96-97.)

On June 6, 2012, Dr. Coss saw Minyard for review of left knee pain rated as a 6 of 10

with moderate functional impairment.  (Tr. 1042.)  Minyard stated that aggravating factors

included lying down, sitting, or simply standing and walking.  *Id*.  Dr. Coss concluded

that Minyard had developed a saphenous neuritis/mononeuritis of the left lower limb

directly caused by her prior injury.  (Tr. 1045.).

On July 17, 2012, Dr. Rivera-Weiss examined Minyard, finding moderate tenderness

8

in the distal tibia and fibula and severe tenderness in the medial and lateral aspects.  (Tr. 928.)
She also had moderate-severe tenderness of the medial malleolus of the left ankle and foot, mild
swelling of the left medial ankle, and mild-moderate pain with plantar flexion.  *Id.*  Her gait was
mildly antalgic.  (Tr. 929.)  She was advised to bear weight as tolerated.  *Id.*

On July 19, 2012, Minyard reported to Dr. Lynch complaining of 7 of 10 pain in
her right lumbar spine and right hip.  (Tr. 936.)  X-rays taken the same date revealed facet
arthritis bilaterally at L5-S1 mild in severity and chronic changes.  (Tr. 1013.)

On October 2, 2012, an EMG of the lower extremities revealed no abnormalities.  (Tr.
1064.)  A lumbar MRI taken the same day showed areas of central canal stenosis and
degenerative disc disease with disc protrusions at L3-4 and L4-5.  (Tr. 1079-80.)

In a letter dated November 21, 2012, Dr. Coss opined that Minyard was unable to reliably
return to work despite her ability to do activities of daily living and work about her house.  (Tr.
1072.)  He believed she was permanently disabled due to deep perineal nerve pain and
mononeuritis of the lower left leg, which developed after her fibular and posterior medial
malleolar fractures.  *Id.*  Due to continuing ankle pain, it was Dr. Coss' opinion that Minyard was
unable to stand or walk for extended periods of time.  *Id.*

On November 22, 2012, Minyard received lumbar epidural injections for lower back pain.
(Tr. 1073.)

On February 7, 2013, Minyard was seen at the NeuroCare Center and complained of an
increased frequency and severity of her headaches and neck pain.  (Tr. 1108.)  She was
prescribed a five-day course of Prednisone.  (Tr. 1110.)

### III.  Standard for Disability

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).[2]

A claimant is entitled to a POD only if: (1) she had a disability; (2) she was insured when she became disabled; and (3) she filed while she was disabled or within twelve months of the date the disability ended.  42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

Minyard was insured on her alleged disability onset date, January 4, 2010, and remained insured through the date of the ALJ's decision, June 12, 2013.  (Tr. 19 .)  Therefore, in order to be entitled to POD and DIB, Minyard must establish a continuous twelve month period of disability commencing between these dates.  Any discontinuity in the twelve month period precludes an entitlement to benefits.  *See Mullis v. Bowen,* 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F. 2d 191, 195 (6th Cir. 1967).

---

[2]  The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity."  Second, the claimant must suffer from a "severe impairment."  A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities."  Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000).  Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled.  For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled.  *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

### IV.  Summary of Commissioner's Decision

The ALJ found Minyard established medically determinable, severe impairments, due to a history of aneurysm with stent, depression, migraines, status post ankle fracture, and degenerative disc disease.  (Tr. 21.)  However, her impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  (Tr. 22.)  Minyard was found incapable of performing her past relevant work, but was determined to have a Residual Functional Capacity ("RFC") for a limited range of light work.  (Tr. 23, 29.)  The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Minyard was not disabled.  (Tr. 30-31.)

### V.  Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).  Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762,

772-3 (6th Cir. 2001) (*citing Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached.  *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).")  This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.  *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied.  Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal.  *See, e.g.,White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.")

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result."  *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (*quoting Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir.1996); *accord Shrader v. Astrue*, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, 2010 WL

2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

## VI.  Analysis

### *Weight Ascribed to Medical Opinions*

In her first assignment of error, Minyard asserts that the ALJ failed to adequately weigh and evaluate the opinion of her treating orthopedic surgeon, Steven Coss, M.D.  (ECF No. 14 at 14-17.)  Minyard further argues that the ALJ failed to properly weigh and address the opinion of State Agency reviewing physician, Gerald Klyop, M.D.  *Id*.

Under Social Security regulations, the opinion of a treating physician is entitled to controlling weight if such opinion (1) "is well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "is not inconsistent with the other substantial evidence in [the] case record."  *Meece v. Barnhart*, 2006 WL 2271336 at * 4 (6th Cir. Aug. 8, 2006); 20 C.F.R. § 404.1527(c)(2).  "[A] finding that a treating source medical opinion . . . is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected."  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399 (6th Cir. 2009) (*quoting* Soc. Sec. Rul. 96-2p, 1996 SSR LEXIS 9 at *9); *Meece*, 2006 WL 2271336 at * 4 (Even if not entitled to controlling weight, the opinion of a treating physician is generally entitled to more weight than other medical opinions.)  Indeed, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927."  *Blakley*, 581 F.3d at 408.[3]

---

[3]  Pursuant to 20 C.F.R. § 404.1527(c)(2), when not assigning controlling weight to a treating physician's opinion, the Commissioner should consider the length of the relationship and frequency of examination, the nature and extent of the treatment relationship, how

If the ALJ determines a treating source opinion is not entitled to controlling weight, "the ALJ must provide 'good reasons' for discounting [the opinion], reasons that are 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234 (6th Cir. Ohio 2007) (quoting Soc. Sec. Ruling 96-2p, 1996 SSR LEXIS 9 at * 5).  The purpose of this requirement is two-fold.  First, a sufficiently clear explanation "'let[s] claimants understand the disposition of their cases,' particularly where a claimant knows that his physician has deemed him disabled and therefore 'might be bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied.'" *Id*. (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)).  Second, the explanation "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Wilson*, 378 F.3d at 544.  Because of the significance of this requirement, the Sixth Circuit has held that the failure to articulate "good reasons" for discounting a treating physician's opinion "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243.  Nevertheless, the opinion of a treating physician must be based on sufficient medical data, and upon detailed clinical and diagnostic test evidence.  *See Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993); *Blakley*, 581 F.3d at 406.

---

well-supported the opinion is by medical signs and laboratory findings, its consistency with the record as a whole, the treating source's specialization, the source's familiarity with the Social Security program and understanding of its evidentiary requirements, and the extent to which the source is familiar with other information in the case record relevant to the decision.

With respect to Dr. Coss, Minyard points to the following opinions: (1) a pre-alleged onset date July 15, 2009 treatment note stating that Minyard "is able to return to work with restrictions of sedentary work;" (2) a September 24, 2011 treatment note that states "full weight bearing keep permanent restrictions;" and, (3) a November 21, 2012 letter stating that Minyard has an "extreme amount of chronic ankle pain" resulting in an "inability to stand or walk for extended periods of time" rendering her "permanently disabled." (Tr. 385, 536, 1072.) Minyard argues that the ALJ, by finding she was capable of light work, rejected Dr. Coss' opinion that she could perform no more than sedentary activity. (ECF No. 14 at 16.) Furthermore, Minyard contends the ALJ misstated Dr. Coss' November 2012 opinion and also failed to give good reasons for rejecting the standing/walking limitations contained therein. *Id*. The ALJ addressed Dr. Coss' opinions as follows:

> In November 2012, H. Steven Coss, M.D., one of the claimant's physicians, said that the claimant had cognitive impairments and she had chronic ankle pain, which rendered the claimant permanently disabled (32F). Dr. Coss asserted that the claimant could not stand or walk for extended periods, although she was able to perform her activities of daily living in her home (32F). I grant little weight to Dr. Coss' opinion. While he treated the claimant, the medical record provides little support for his assertion that the claimant was unable to *sit or stand* for extended periods.[4] Although she had some antalgia, the objective evidence did not indicate such severe restriction. Moreover, Dr. Coss did not provide specific parameters of the claimant's restrictions. Accordingly, he considered vocational considerations in determining that the limitations would prevent the claimant from

---

[4] Minyard takes issue with the ALJ's misstatement regarding an inability to sit or stand for extended periods, as the letter actually refers to an inability to "stand or walk for extended periods of time." (ECF No. 14 at 16, Tr. 1072.) The Commissioner concedes the ALJ's decision contains a misstatement, but argues it is harmless as it is merely a typographical error. (ECF No. 17 at 12.) The Court agrees. As the Commissioner points out, the sentence preceding the one containing the error accurately noted that Dr. Coss asserted that the claimant could not *stand or walk* for extended periods. (Tr. 29.) As such, this misstatement alone is not grounds for remand. Nonetheless, the question remains whether the ALJ furnished good reasons for ascribing little weight to Dr. Coss' opinion.

15

working, despite the fact that Dr. Coss was not an expert in vocational matters. (Tr. 29) (emphasis added).

First and foremost, the ALJ was not bound by Dr. Coss' conclusory statement that Minyard was disabled, and may reject such a determination when good reasons are identified for not accepting them. *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984); *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 855 (6th Cir. 1986); *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984). According to 20 C.F.R. § 404.1527(d)(1), the Social Security Commissioner makes the determination whether a claimant meets the statutory definition of disability. This necessarily includes a review of all the medical findings and other evidence that support a medical source's statement that one is disabled. "A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled." *Id*. It is the Commissioner who must make the final decision on the ultimate issue of disability. *Duncan*, 801 F.2d at 855; *Harris*, 756 F.2d at 435; *Watkins v. Schweiker*, 667 F.2d 954, 958 n. 1 (11th Cir. 1982). Nonetheless, Social Security Ruling ("SSR") 96-5p, 1996 SSR LEXIS 2 discusses the evaluation of medical source statements on issues reserved to the Commissioner. "[O]pinions from any medical source on issues reserved to the Commissioner must never be ignored. The adjudicator is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner. If the case record contains an opinion from a medical source on an issue reserved to the Commissioner, the adjudicator must evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record." *See* SSR 96-5p, 1996 SSR LEXIS 2; 20 C.F.R. § 404.927(d). As such, the ALJ did not err by not adopting Dr.

16

Coss' opinion that Minyard was unemployable, especially where that opinion seemed to be based on the assumption that a person restricted to sedentary activity could not work.

Nevertheless, Minyard avers that Dr. Coss' opinion contains a limitation to no more than sedentary work.  (ECF No. 14 at 16.)  To be precise, Dr. Coss' exact opinion was as follows: "It is my medical opinion that due to continuing ankle pain, inability to stand or walk for extended periods of time she would not be able to engage in sustained remunerative employment, that is to say that she would not be able to reliably return to the work environment."  (Tr. 1072.) The Court agrees that Dr. Coss' opinion, while imprecise, is inconsistent with the demands of light exertional work.  "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).  As explained in Social Security Ruling 83-10, 1983 SSR LEXIS 30 "[s]ince frequent lifting or carrying requires being on ones feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday.  Sitting may occur intermittently during the remaining time." SSR 83-10, 1983 SSR LEXIS 30, 1983 WL 31251 at * 6 ("Relatively few unskilled light jobs are performed in a seated position.")

While it is true that Dr. Coss did not provide specific parameters as to how long Minyard could stand and/or walk in an 8-hour workday, the Court is of the opinion that the requisite 6 hours of standing for light work is well in excess of an "inability to stand or walk for extended periods of time."  As such, the ALJ rejected Dr. Coss' opinion and was required to give

good reasons for doing so.  The ALJ's only explanation is a conclusory statement that Dr. Coss'

opinion was not supported by the objective evidence.  (Tr. 29.)  The ALJ, however, fails to

explain or identify any inconsistencies between a limitation to sedentary work and the objective

evidence.  Such a terse and conclusory explanation does not, in and of itself, constitute a "good

reason" for rejecting a treating physician's opinion. *See, e.g., Rogers v. Comm'r of Soc. Sec.*, 486

F.3d 234, 245-46 (6th Cir. 2007) (finding an ALJ failed to give "good reasons" for rejecting the

limitations contained in a treating source's opinion where the ALJ merely stated, without

explanation, that the evidence of record did not support the severity of said limitations); *accord*

*Dunlap v. Comm'r of Soc. Sec.*, 509 Fed. Appx. 472, 2012 U.S. App. LEXIS 26483 (6th Cir. Dec.

27, 2012); *Bartolome v. Comm'r of Soc. Sec.*, 2011 U.S. Dist. LEXIS 135918, 2011 WL 5920928

(W.D. Mich. Nov. 28, 2011) (noting that merely citing to "the evidence" and referring to the

appropriate regulation was insufficient to satisfy the "good reasons" requirement); *Beukema v.*

*Comm'r of Soc. Sec.*, 2015 U.S. Dist. LEXIS 85253 (W.D. Mich. July 1, 2015) ("Simply stating

that the physician's opinions 'are not well-supported by any objective findings and are

inconsistent with other credible evidence' is, without more, too 'ambiguous' to permit

meaningful review of the ALJ's assessment.") (*quoting Gayheart v. Comm'r of Soc. Sec.*, 710

F.3d 365, 376-77 (6th Cir. 2013)).

    The Court finds the ALJ's explanation to be legally insufficient.  Without any meaningful

analysis, the Court can only guess as to how Dr. Coss' opinion was allegedly inconsistent with

the medical evidence of record.  Because the ALJ did not provide an analysis that is sufficiently

specific, Minyard's argument that the ALJ failed to give good reasons for rejecting Dr. Coss'

opinion is well-taken.  The Court is unable to trace the path of the ALJ's reasoning as his

analysis was insufficient under the Administration's procedural rules.

Nonetheless, the Commissioner argues that any error in the ALJ's evaluation of Dr. Coss' opinion was harmless error because no reasonable ALJ could have credited it. (ECF No. 17 at 12-14.) The Sixth Circuit has explained that "[f]ailure to meet [the good reasons] requirement requires remand unless the failure is harmless error." *Cox v. Comm'r of Soc. Sec.*, 2015 U.S. App. LEXIS 9975 (6ᵗʰ Cir. 2015) (*citing Cole v. Astrue*, 661 F.3d 931, 940 (6ᵗʰ Cir. 2011)). "The error is not harmless where it obstructs meaningful review of the ALJ's decision." *Cox*, 2015 U.S. App. LEXIS 9975 (*citing Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6ᵗʰ Cir. 2004)). The Sixth Circuit has concluded that a failure to give good reasons can only be deemed harmless error if any of three criteria are met:

1. a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it;

2. if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion; or

3. where the Commissioner has met the goal of [the good reasons requirement] even though she has not complied with the terms of the regulation.

*Johnson-Hunt v. Comm'r of Soc. Sec.*, 500 Fed. App'x. 411, 419 (6ᵗʰ Cir. 2012).

The Commissioner argues only that Dr. Coss' opinion was so patently deficient that it could not possibly be credited.[5] Dr. Coss' opinion was not patently deficient, as Minyard's medical records are replete with complaints of pain, especially in her left leg and ankle after surgery. Though other medical sources do not ascribe such significant standing/walking

---

[5] With respect to the second criteria, it cannot reasonably be argued that the ALJ's RFC determination is consistent with Dr. Coss' opinion.

19

limitations, that alone does not render Dr. Coss' opinion patently deficient.  Even if substantial evidence of record could have justified the ALJ's rejection of Dr. Coss' opinion, failure to give good reasons still requires remand.  "The ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record."  *Johnson-Hunt*, 500 Fed. App'x at 420 (*quoting Cole*, 661 F.3d at 939-40).

Accordingly, The Commissioner's decision is vacated and remanded so that the ALJ may properly address Dr. Coss' opinion.[6]  Because remand on the basis that the ALJ violated the treating physician rule, the Court declines to address Minyard's remaining arguments in the interests of judicial economy.

## VII.  Decision

For the foregoing reasons, the Court finds the decision of the Commissioner not supported by substantial evidence.  Accordingly, the decision is VACATED and the case is REMANDED,

---

[6]  The Court is aware that the ALJ posed a hypothetical to the VE that added to the RFC a restriction to sedentary work.  (Tr. 67.)  In response, the VE identified a number of jobs that such an individual could perform.  *Id*.  Thus, remand may be a perfunctory exercise. Nonetheless, the Commissioner has not argued that the VE's testimony rendered the ALJ's error harmless, nor has she cited any authority suggesting as much.  This Court's own search did not uncover any authority allowing it to excuse a failure to follow the treating physician rule under similar circumstances.  To the contrary, the holdings of the Sixth Circuit seem to suggest otherwise.  *See, e.g., Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546 (6th Cir. 2004) ("A court cannot excuse the denial of a mandatory procedural protection simply because ... there is sufficient evidence in the record for the ALJ to discount the treating source's opinion and, thus, a different outcome on remand is unlikely.")

pursuant to 42 U.S.C. § 405(g) sentence four, for further proceedings consistent with this

opinion.

IT IS SO ORDERED.

/s/ Greg White
U.S. Magistrate Judge

Date: August 31, 2015